# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS A. JACKSON, | CASE NO. CV F 12-0791 LJO MJS |
| Plaintiff, | **ORDER ON DEFENDANTS' MOTIONS TO DISMISS** |
| vs. | (Docs. 23, 24.) |
| OLAM WEST COAST, INC., et al., | |
| Defendants. | |
| _____/ | |

## INTRODUCTION

Defendant SK Foods, LP ("SK Foods") appears through its Chapter 11 bankruptcy trustee Bradley Sharp ("Trustee Sharp"), who seeks to dismiss as lacking subject matter jurisdiction plaintiff Thomas A. Jackson's ("Mr. Jackson's") copyright infringement and related action in that Mr. Jackson failed to seek bankruptcy court leave prior to bringing this action. Defendants Olam West Coast, Inc. ("Olam West") and Olam Tomato Processors, Inc. ("Olam Tomato") join in Trustee Sharp's dismissal request and further seek dismissal of claims against them in that Trustee Sharp, on behalf of SK Foods, is an indispensable party to resolution of Mr. Jackson's claims. Mr. Jackson responds that his claims address SK Foods' post-bankruptcy filing actions, not Trustee Sharp's bankruptcy estate administration, to render this Court as the proper forum to determine Mr. Sharp's claims. This Court considered

1

defendants'[1] motions on the record without a hearing, pursuant to Local Rule 230(g). For the reasons discussed below, this Court DISMISSES without prejudice this action and REFERS this action to the bankruptcy court for this district.

## BACKGROUND[2]

### Summary

Mr. Jackson owns, designs, licenses and supports copyrighted software systems for tomato processors ("software systems"). Prior to its bankruptcy, SK Foods processed and packaged consumer foods. Olam processes tomatoes and consumer foods. Mr. Jackson proceeds on his Complaint for Copyright Infringement, etc. ("complaint") to allege that SK Foods wrongfully transferred to Olam occurrences[3] of Mr. Jackson's software systems. Trustee Sharp seeks dismissal of Mr. Jackson's action in that his claims should be pursued in SK Foods' Chapter 11 bankruptcy, not a district court action. Olam seeks dismissal of Mr. Jackson's claims in that SK Foods is an indispensable party to preclude resolution of claims against Olam. Mr. Jackson responds that the contract for installation of the occurrences of Mr. Jackson's subject software systems at SK Foods was formed after SK Foods' bankruptcy filing so that occurrences wrongfully transferred to Olam did not exist at the time of bankruptcy court action to preclude assertions of Mr. Jackson's claims in SK Foods' bankruptcy.

### Installation Of Software Systems

In 1991, Mr. Jackson installed his software system at SK Foods' Lemoore, California facility ("Lemoore facility software system"). SK Foods licensed the Lemoore facility software system pursuant to a license agreement with Mr. Jackson. In 2003, Mr. Jackson installed temporary portions of his software system at SK Foods' facility in Williams, California ("Williams facility software system").

On May 9, 2012, Mr. Jackson registered his copyrights in his software systems.

///

---

[1] Trustee Sharp, SK Foods, Olam West and Olam Tomato will be referred to collectively as "defendants." Olam West and Olam Tomato will be referred to collectively as "Olam." Defendants take the position that although SK Foods is the named defendant, this action proceeds "in reality" against Trustee Sharp as SK Foods' bankruptcy trustee.

[2] The factual recitation is derived generally from the complaint and other matters which this Court may consider.

[3] An "occurrence" is an instance (single copy) of one or more software applications, modules and/or systems.

2

**SK Foods' Bankruptcy And Sale Of Assets**

In May 2009, SK Foods' chapter 11 bankruptcy was initiated in the bankruptcy court of this district. On May 18, 2009, Trustee Sharp was appointed as SK Foods' trustee and assumed control over SK Foods' property and affairs.

On May 27, 2009, Mr. Jackson provided proposals to SK Foods employee Dan Kline ("Mr. Kline") to install two new occurrences of the software systems for the Lemoore and Williams facilities ("new occurrences"). As the complaint notes, Mr. Jackson discussed with Mr. Kline "three potential licensing options":

> (1) a purchaser could assume one or both of the SKF Occurrences [Lemoore and Williams facilities software systems] under certain conditions and with certain assurances . . ., (2) if one company purchased both the Lemoore Facility and the Williams Facility and a data link could be established between the two facilities, then the purchaser could license and pay licensing fees for a single new occurrence of the Software Systems; and (3) if one company purchased the Lemoore Facility and another company purchased the Williams Facility, or one company purchased both the Lemoore Facility and the Williams Facility and the purchaser wanted to continue to use two separate occurrences, then two licenses and two licensing fees would be required, one for each of the Lemoore Facility and the Williams Facility.

On June 5, 2009, SK Foods filed bankruptcy schedules of assets and liabilities which listed neither Mr. Jackson as a creditor, the Lemoore and Williams facilities software systems, nor software licenses.

On June 22, 2009, Trustee Sharp filed a sales motion to seek bankruptcy court approval of the sale of substantially all SK Foods' assets to Olam pursuant to their asset purchase agreement ("purchase agreement"). The bankruptcy court issued a June 26, 2009 order ("sale order") to authorize the sale and to vest in Olam "all right, title and interest of the Debtors and the bankruptcy estates in and to the Property, free and clear of any liens, claims, encumbrances or other interests in or with respect to the Property." The sale order reserves to the bankruptcy court "jurisdiction to resolve any dispute between the Trustee, Buyer, and any other party in interest over whether any property listed on Exhibit 1.6 to the Purchase Agreement is property of the Debtors' estates" and "to enforce and implement the terms and provisions of this Sale Order and Purchase Agreement . . ., including retaining jurisdiction to . . . (b) resolve any disputes arising under or related to the Purchase Agreement, and (c) resolve any disputes regarding liens, claims, or interests asserted against the Property."

The purchase agreement defines "Purchased Assets" to include "Intellectual Property," that is, "[a]ll of Seller's right, title and interests to any inventions . . . trade secrets, information technology systems . . . and all other proprietary information and intellectual property related to the Purchased Assets." The purchase agreement defines "Accounting Systems" to include the "Legacy System used by Seller to carry on the tomato processing business." Mr. Jackson notes that the "Legacy System" refers to the new occurrences and that SK Foods could not transfer to Olam the new occurrences or the Lemoore and Williams facilities software systems (collectively "Jackson software systems") without his permission.

**Mr. Jackson's Knowledge Of Software Transfer**

As early as June 27, 2009 but no later than June 29, 2009, Mr. Kline instructed Mr. Jackson to install the new occurrences. Mr. Jackson notes that the contract for the new occurrences was entered into after the purchase agreement and sale order. Mr. Jackson completed installation of the new occurrences at the Lemoore facility on July 7, 2009 and at the Williams facility two weeks later.[4]

On June 27, 2009, Mr. Jackson learned, using the complaint's words, that "a company was purchasing [SK Foods'] assets and that the purchaser typically uses SAP software systems" and that "the purchaser's SAP software systems were not adapted and/or programmed to operate, at minimum, the bulk tomato processing and packaged consumer food processing aspects of [SK Foods'] facilities, and that the purchaser would have no way, without the Software Systems, to operate the facilities." On July 1, 2009 prior to complete installation of the new occurrences, Mr. Jackson learned from a newspaper article that Olam was the purchaser of SK Foods' assets.

The sale of SK Foods' assets to Olam closed on July 7, 2009 to transfer all right, title and interest of SK Foods in the purchased assets to Olam, pursuant to the purchase agreement. Mr. Jackson challenges SK Foods' right to transfer title to the Jackson software systems pursuant to the purchase agreement and completed installation of the new occurrences with the understanding that a license agreement would be negotiated with Olam after closing.

---

[4] In his declaration, Trustee Sharp states that he arranged for Avery Software, who was associated with Mr. Jackson, to install the new occurrences at the Lemoore and Williams facilities for which Avery Software was paid $30,000 from SK Foods' estate and that the new occurrences "were subsequently transferred to Olam."

4

**Administrative Claims Deadline**

The bankruptcy court's December 4, 2009 order ("bar date order") set a February 15, 2010 bar date to assert administrative expense claims against SK Foods. The notice of bar date ("bar date notice") attached to the bar date order states: "Only those parties the Chapter 11 Trustee serves with this Notice shall be bound by the deadline contained herein." Mr. Jackson was not served with the bar date notice and filed no administrative expense claim against the SK Foods' estate to address transfer of the Jackson software systems to Olam.

**Mr. Jackson's Claims**

The complaint, filed on May 14, 2012, alleges that SK Foods retained the Lemoore and Williams facilities software systems and continues to use them to wind down operations or to conduct other business and accounting. The complaint further alleges that Olam:

1. On July 7, 2009 began using the new occurrences without right to do so;
2. Olam retains current possession of the new occurrences; and
3. Olam copied a substantial portion of the Jackson software systems to design its SAP software applications for bulk tomato processing, packaging consumer foods and/or general management to prepare derivative works based on the Jackson software systems.

The complaint alleges:

1. A (first) federal copyright infringement claim that Olam violated Mr. Jackson's exclusive copyrights by reproducing and preparing derivative works of the Jackson software systems and that SK Foods violated Mr. Jackson's exclusive copyrights by distributing or transferring the Jackson software systems to Olam;
2. A (second) California statutory trade secret misappropriation claim that Olam appropriated the Jackson software systems without Mr. Jackson's consent and uses the Jackson software systems without paying licensing fees;
3. A (third) California statutory unfair business practices claim that Olam's conduct violates the California Unfair Competition Law, Cal. Bus. & Prof. §§ 17200, et seq.;
4. A (fourth) common law misappropriation claim that Olam appropriated and used the Jackson software systems without Mr. Jackson's authorization or consent;

5. A (fifth) conversion claim that SK Foods wrongfully exercised ownership rights over the Jackson software systems when it purported to transfer the Jackson software systems to Olam and that Olam intentionally took possession of the new occurrences for a significant time period; and

6. A (sixth) breach of implied in fact contract that Olam used the Jackson software systems and refused to pay Mr. Jackson licensing fees due to breach an implied in fact contract.

## DISCUSSION

### Subject Matter Jurisdiction

*F.R.Civ.P. 12(b)(1) Motion To Dismiss Standards*

Defendants contend that this Court lacks subject matter jurisdiction with Mr. Jackson's failure to seek bankruptcy court leave to pursue the complaint's claims.

F.R.Civ.P. 12(b)(1) authorizes a motion to dismiss for lack of subject matter jurisdiction. Fundamentally, federal courts are of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 341 (1994). A "court of the United States may not grant relief absent a constitutional or valid statutory grant of jurisdiction." *U.S. v. Bravo-Diaz*, 312 F.3d 995, 997 (9th Cir. 2002). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes*, 873 F. 2d 1221, 1225 (9th Cir. 1989). Limits on federal jurisdiction must neither be disregarded nor evaded. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396 (1978). "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v. Communities for Better Environment*, 236 F.3d 495, 499 (9th Cir. 2001).

When addressing an attack on the existence of subject matter jurisdiction, a court "is not restricted to the face of the pleadings." *McCarthy v. U.S.*, 850 F.2d 558, 560 (9th Cir. 1988). In such a case, a court may rely on evidence extrinsic to the pleadings and resolve factual disputes relating to jurisdiction. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.), *cert. denied*, 493 U.S. 993, 110 S.Ct. 541 (1989); *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983); *Smith v. Rossotte*, 250 F.Supp.2d 1266, 1268 (D. Or. 2003) (a court

"may consider evidence outside the pleadings to resolve factual disputes apart from the pleadings").

No presumptive truthfulness attaches to a plaintiff's allegations, and the existence of disputed material facts does not preclude evaluation of the merits of jurisdictional claims. *Thornhill Pub. Co., Inc. v. General Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). On a factual attack of a complaint with affidavits or other evidence, "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High School*, 343 F.3d 1036, 1040, n. 2 (9th Cir. 2003).

When a court considers "items outside the pleading" on a F.R.Civ.P. 12(b)(1) motion, the court resolves "all disputes of fact in favor of the non-movant." *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996). The Ninth Circuit Court of Appeals explains that "where the district court has properly considered items outside the complaint in considering a motion to dismiss, the standard we apply upon de novo review of the record is similar to the summary judgment standard that the district court purported to apply." *Drier*, 106 F.3d at 847.

With these standards in mind, this Court turns to defendants' challenges to this Court's subject matter jurisdiction.

### *Bankruptcy Court Leave*

Defendants argue that Mr. Jackson needed prior bankruptcy court leave to pursue claims in this action which defendants characterize as essentially proceeding against Trustee Sharp in place of SK Foods. Defendants rely on *In re Crown Vantage, Inc.*, 421 F.3d 963, 970-971 (9th Cir. 2005), which applied the *Barton* doctrine[5] to bankruptcy trustees:

> We join our sister circuits in holding that a party must first obtain leave of the bankruptcy court before it initiates an action in another forum against a bankruptcy trustee or other officer appointed by the bankruptcy court for acts done in the officer's official capacity. . . .
>
> This holding is firmly grounded in the *Barton* doctrine, established by the Supreme Court over a century ago, which provides that, before suit can be brought

---

[5] "The Barton doctrine takes its name from *Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881), in which the Supreme Court ruled that the common law barred suits against receivers in courts other than the court charged with the administration of the estate. *Id.* at 127. The Supreme Court held in *Barton* that, before suit is brought against such a receiver, leave of the court by which the trustee was appointed must be obtained." *Crown Vantage*, 421 F.3d at 969, n. 4.

> against a court-appointed receiver, "leave of the court by which he was appointed must be obtained." . . . (Citations omitted.)

The Ninth Circuit has further explained:

> . . .without leave of the bankruptcy court, no suit may be maintained against a trustee for actions taken in the administration of the estate. A court other than the appointing court has no jurisdiction to entertain an action against the trustee for acts within the trustee's authority as an officer of the court without leave of the appointing court.

*Curry v. Castillo (In re Castillo)*, 297 F.3d 940, 945(9th Cir.2002).

Defendants characterize a claim against SK Foods as a claim against its bankruptcy estate of which Trustee Sharp is representative. 11 U.S.C. § 323 provides that a trustee "is the representative of the estate" and "has capacity to sue and be sued." Defendants argue that Trustee Sharp acted within the scope of his trustee duties and authority when he sold SK Foods' assets to Olam, a sale approved by the bankruptcy court, to fall within *Barton* protection. Defendants conclude that since Mr. Jackson failed to obtain bankruptcy leave, he may not pursue claims essentially against Trustee Sharp in this action to warrant dismissal for lack of subject matter jurisdiction.

Mr. Jackson responds that his "claims are brought against SK Foods for its post-petition conduct, not against the Chapter 11 Trustee for acts in furtherance of his official duties." Mr. Jackson notes that he does not claim that Trustee Sharp was negligent or breached fiduciary duties in connection with his trustee duties. Mr. Jackson argues that his claims arise from his post-petition and post-sales order contract with SK Foods to install the new occurrences which were not subject to the purchase agreement and were wrongfully transferred to Olam. Mr. Jackson characterizes the contract to install the new occurrences as unrelated to Trustee Sharp's duties "to gather and liquidate the property of the estate."

This Court agrees with defendants that the transaction giving rise to the complaint's claims was the transfer of the Jackson software systems to Olam which arose during Trustee Sharp's liquidation and administration of SF Foods' bankruptcy estate. Without the sale to Olam, the complaint's claims do not arise. The record reveals that installation of the new occurrences was to facilitate sale of SK Foods' assets to Olam. Alleged infringement of the Jackson software systems arose from the SF Foods' asset sale which Trustee Sharp arranged to administer the SF Foods' bankruptcy estate. Mr. Jackson's claims are subject to the *Barton* doctrine to require bankruptcy court approval to pursue them.

8

**Failure To File Administrative Claim**

Alternatively, defendants seek a F.R.Civ.P. 12(c) judgment on the pleadings that claims against Trustee Sharp are barred with Mr. Jackson's failure to file a timely administrative expense claim in SK Foods' bankruptcy.[6]

***F.R.Civ.P. 12(c) Motion For Judgment On Pleadings Standards***

F.R.Civ.P. 12(c) permits a party to seek judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial." "A motion for judgment on the pleadings should be granted where it appears the moving party is entitled to judgment as a matter of law." *Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir. 2003). A "judgment on the pleadings is appropriate when, even if all allegations in the complaint are true, the moving party is entitled to judgment as a matter of law." *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993).

"A judgment on the pleadings is a decision on the merits." *3550 Stevens Creek Associates v. Barclays Bank of California*, 915 F.2d 1355, 1356 (9th Cir. 1990), *cert. denied*, 500 U.S. 917, 111 S.Ct. 2014 (1991). A F.R.Civ.P. 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Herbert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam). "[T]he central issue is whether, in light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001). "[A]ll allegations of fact of the opposing party are accepted as true." *Austad v. United States*, 386 F.2d 147, 149 (9th Cir.1967).

"A Rule 12(c) motion challenges the legal sufficiency of the opposing party's pleadings and operates in much the same manner as a motion to dismiss under Rule 12(b)(6)." *Morgan v. County of Yolo*, 436 F.Supp.2d 1152, 1154-1155 (E.D. Cal. 2006).

"When considering a motion for judgment on the pleadings, this court may consider facts that 'are contained in materials of which the court may take judicial notice.'" *Heliotrope General, Inc. v. Ford Motor Co.*, 189 F.3d 971, 981, n. 18 (9th Cir. 1999) (citation omitted). A motion for judgment on

---

[6] Trustee Sharp has filed for SK Foods an answer to the complaint.

9

1  the pleadings may be granted if, after assessing the complaint and matters for which judicial notice is
2  proper, it appears "beyond doubt that the [non-moving party] cannot prove any facts that would support
3  his claim for relief." *Morgan v. County of Yolo*, 436 F.Supp.2d 1152, 1155 (E.D. Cal. 2006), *aff'd,* 277
4  Fed.Appx. 734 (9th Cir. 2008).

5        A fact subject to judicial notice is not subject to reasonable dispute because it "(1) is generally
6  known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined
7  from sources whose accuracy cannot be reasonably questioned." F.R.Evid. 201(b). A "court may take
8  judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 669, 689 (9th Cir.
9  2001). Such a fact is "conclusive" and "precludes either party from introducing evidence to disprove
10 that fact." *Metropolitan Creditors' Trust v. Pricewaterhousecoopers, LLP*, 463 F.Supp.2d 1193, 1197
11 (E.D. Wash. 2006).

12                         ***Administrative Expense Claims***

13       Under 11 U.S.C. § 503(b)(1)(A), administrative expenses include "the actual, necessary costs
14 and expenses of preserving the estate." F.R.Bankr.P. 3003(c)(3) mandates a bankruptcy court to "fix
15 and for cause shown may extend the time within which proofs of claim or interest may be filed."
16 Administrative expense claims "must be filed by the court-ordered bar date to enable the debtor and [its]
17 creditors to know, reasonably promptly, what parties are making claims and in what general amounts."
18 *In re Aargus Polybag Co., Inc.*, 172 B.R. 586, 589 (Bankr. N.D. Ill. 1994) (internal quotation and
19 citations omitted).

20       Defendants argue that Mr. Jackson is barred to pursue claims against the SK Foods' bankruptcy
21 estate given Mr. Jackson's failure to pursue in the bankruptcy court an administrative expense claim
22 prior to the February 15, 2010 bar date. Defendants argue that Mr. Jackson is subject to the
23 administrative claims bar date despite the absence of formal notice in that a creditor omitted from the
24 list of creditors must take steps to ensure receipt of notice of bar dates. Defendants argue that knowledge
25 of a bankruptcy places a creditor on inquiry notice of deadlines.

26       "When the holder of a large, unsecured claim . . . receives any notice from the bankruptcy court
27 that its debtor has initiated bankruptcy proceedings, it is under constructive or inquiry notice that its
28 claim may be affected, and it ignores the proceedings to which the notice refers at its peril." *Matter of*

*Gregory,* 705 F.2d 1118, 1123 (9th Cir.1983). "Whatever is notice enough to excite attention and put the party on his guard and call for inquiry, is notice of everything to which such inquiry may have led. When a person has sufficient information to lead him to a fact, he shall be deemed to be conversant of it." *D.C. Transit Systems, Inc. v. United States*, 531 F.Supp. 808, 812 (D.D.C.1982). (citations omitted.)

Mr. Jackson responds that the bar date order approves the form and manner of its attached bar date notice, which provides: "Only those parties the Chapter 11 Trustee serves with this Notice shall be bound by the deadline contained herein." Mr. Jackson argues that he is not bound by the bar date in absence of his receipt of the bar date notice. Moreover, "there is no provision in the Bankruptcy Code which establishes a bar date for administrative claims, and therefore, the bar date set by the court is set as an administrative aid designed to assist to conclude the administration of the Chapter 11 case and is not a statute of limitation." *In re Centurion Health of Carrollwood Inc.*, 177 B.R. 371, 373 (Bankr. M.D. Fla. 1994). Mr. Jackson further argues that he is not subject to a bar date in that his claims arose after SK Foods' bankruptcy and address SK Foods' post-petition transfer of assets.

Defendants fail to demonstrate that Mr. Jackson is subject to the bar date order's deadline to file an administrative claim. Mr. Jackson lacked pre-petition claims and was not a creditor entitled to bar date notice, especially considering SK Foods' failure to disclose the Jackson software systems as an asset in its bankruptcy schedules. Nothing in the record indicates that the bankruptcy court supplied relevant notice to Mr. Jackson. Holding Mr. Jackson to the bar date would serve only to promote SK Foods' questionable conduct in failing to disclose the Jackson software systems.

Defendants note that Mr. Jackson was aware of SK Foods' asset sale to Olam in July 2009 and of potential claims prior to the February 15, 2010 bar date in that he tried to negotiate a license agreement with Olam during July to December 2009. Defendants hold Jackson to monitor the SK Foods' bankruptcy, to apprise himself of deadlines, and to add himself to the creditors mailing list to receive important notices.

Mr. Jackson notes his absence of knowledge of the upcoming SK Foods' assets sale to Olam when Mr. Jackson initially addressed installation of the new occurrences in July 2009. The record reveals that days prior to the sales's closing, Mr. Jackson learned that Olam was the purchaser. Defendants point to no relevant authority that Mr. Jackson's limited, unconfirmed knowledge subjects

1 him to the bar date to preclude his claim arising from events near the time of and after the sale of SK
2 Foods's assets to Olam. Defendants attempt to hold Mr. Jackson to standards which lack legal or factual
3 support under the circumstances.

4 Moreover, in his reply papers, Trustee Sharp produces for the first time emails to claim that Mr.
5 Jackson participated in installation of the new occurrences and thus knew that the Jackson software
6 systems were being transferred to Olam. This Court will not consider new factual issues raised for the
7 first time in reply papers. "Reply papers should be limited to matters raised in the opposition papers.
8 It is improper for the moving party to 'shift gears' and introduce new facts or different legal arguments
9 in the reply brief than presented in the moving papers." *Clark v. County of Tulare*, 755 F.Supp.2d 1075,
10 1090 (E.D. Cal. 2010). "Parties cannot raise a new issue for the first time in their reply brief." *State of*
11 *Nev. v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990), *cert. denied*, 499 U.S. 906, 111 S.Ct. 1105 (1991).
12 "Arguments not raised by a party in its opening brief are deemed waived." *U.S. v. Romm*, 455 F.3d 990,
13 997 (9th Cir. 2006), *cert. denied*, 549 U.S. 1150, 127 S.Ct. 1024 (2007). A "district court need not
14 consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th
15 Cir. 2007).

**Bankruptcy Referral**

17 As another alternative, defendants seek referral to the bankruptcy court in that Mr. Jackson's
18 claims "relate to" Trustee Sharp's action to administer and liquidate SK Foods' bankruptcy estate.

19 This Court's General Order No. 163, pursuant to 28 U.S.C. § 157(a),[7] "refers to the bankruptcy
20 judges for this district all cases under title 11 and proceedings under title 11 or arising in or related to
21 a case under title 11." The "test for determining whether a civil proceeding is related to bankruptcy is
22 whether the outcome of the proceeding could conceivably have any effect on the estate being
23 administered in bankruptcy." *In re Fietz*, 852 F.2d 455, 457 (9th Cir.1988): *see Turner v. Ermiger*, 724
24 F.2d 338, 341 (2nd Cir. 1983) (a bankruptcy court's "related to" jurisdiction involves a proceeding, which

---

[7] 28 U.S.C. § 157(a) provides: "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."

has a "significant connection" to the debtor's bankruptcy).

Defendants contend that the complaint's claims constitute a core proceeding subject to bankruptcy court jurisdiction. "The existence of core matters weighs in favor of resolution . . . by the bankruptcy court." *Hawaiian Airlines, Inc. v. Mesa Air Group, Inc.*, 355 B.R. 214, 223 (D. Hi. 2006).

Section 157(b)(1) permits bankruptcy judges to "hear and determine cases under title 11[8] and all core proceedings arising under title 11, or arising in a case under title 11 . . ." In *In re Gruntz*, 202 F.3d 1074, 1081 (9th Cir. 2000), the Ninth Circuit distinguished core and non-core proceedings:

> Thereafter, Congress defined and distinguished "core" and "non-core" proceedings in the 1984 Act.[9] *See* 28 U.S.C. § 157. In general, a "core proceeding" in bankruptcy is one that "invokes a substantive right provided by title 11 or . . . a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 97 (5th Cir.1987). "Non-core proceedings" are those not integral to the restructuring of debtor-creditor relations and not involving a cause of action arising under title 11. *See Windsor Communications Group, Inc. v. Grant* (*In re Windsor Communications Group*), 75 B.R. 713, 721 (E.D. Pa.1985).

Under section 157(a)(2), core proceedings include "matters concerning the administration of the estate," "orders approving the sale of property," "allowance or disallowance of claims against the estate," "orders to turn over property of the estate," and "other proceedings affecting the liquidation of the assets of the estate."

Under section 157(b)(1), "matters that 'arise under' or 'arise in' a bankruptcy case are 'core' proceedings in which the bankruptcy court is authorized to enter final judgments. 'Core' proceedings, therefore, are those actions that generally have no existence outside of bankruptcy. All other proceedings are merely 'related to' the bankruptcy case and are thus, 'non-core'." *In re Kold Kist Brands, Inc.*, 158 B.R. 175, 178 (C.D. Cal. 1993).

"'Arising Under' jurisdiction includes only those proceedings that involve a cause of action 'created or determined by a statutory provision of title 11.'" *In re Leco Enterprises, Inc.*, 144 B.R. 244, 248 (S.D.N.Y.1992) (quoting *Spaulding & Co. v. Buchanan*, 131 B.R. 84, 88 (N.D. Ill. 1990)). "'Arising in'" jurisdiction generally refers to administrative matters that ensue after a case under the Bankruptcy

---

[8] Title 11 refers to the Bankruptcy Code found in Title 11 of the United States Code.

[9] The 1984 Act refers to the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 340.

Code has commenced." *In re Kold Kist Brands,* 158 B.R. at 179. "'Arising in' jurisdiction encompasses 'those administrative matters that arise only in bankruptcy cases' – matters not based on any right expressly created by title 11, but that would have no existence outside of bankruptcy." *In re Leco Enterprises*, 144 B.R. at 248 (quoting *Spaulding,* 131 B.R. at 88).

"Non-core" proceedings are those proceedings that are "otherwise related to the case under title 11." *In re Kold Kist Brands*, 158 B.R. at 178 (quoting 28 U.S.C. § 157(b)(3)). A bankruptcy court's "related to" jurisdiction involves a proceeding, which has a "significant connection" to the debtor's bankruptcy but does not satisfy the "arising under" or "arising in" standard. *Turner v. Ermiger*, 724 F.2d 338, 341 (2nd Cir.1983). "Actions that do not depend on bankruptcy law for their existence and that could proceed in another court are considered 'non-core.'" *Security Farms v. Int'l Broth. of Teamsters, etc.*, 124 F.3d 999, 1008 (9th Cir. 1997).

In *In re Storm Technology, Inc.*, 260 B.R. 152, 155 (N.D. Cal. 2001), the bankruptcy court discussed core proceeding factors:

> To determine whether a proceeding is core, the Court looks to both the form and the substance of the proceeding. *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 97 (5th Cir.1987). . . . The factors the Court considers include whether the rights involved exist independent of Title 11, depend on state law for their resolution, existed prior to the filing of a bankruptcy petition, or were significantly affected by the filing of the bankruptcy case. *Taxel v. Electronic Sports Research* (*In re Cinematronics, Inc.*), 916 F.2d 1444, 1450 n. 5 (9th Cir.1990).

*See In re World Solar Corp.*, 81 B.R. 603, 608 (S.D. Cal. 1988). ("Determining whether a proceeding is a core proceeding or a non-core proceeding requires the court to analyze various causes of action raised by the parties and make a finding that they sufficiently effect the debtor-creditor relationship so as to justify issuance of a final order.")

Defendants contend that the complaint's claims arise out of a bankruptcy court approved sale of assets to involve directly the SK Foods' bankruptcy estate. "[P]ostpetition state law claims asserted by or against a trustee in bankruptcy or the trustee's agents for conduct arising out of the sale of property belonging to the bankruptcy estate qualify as core proceedings." *In re Harris Pine Mills*, 44 F.3d 1431, 1437, 1438 (9th Cir.1995) ("postpetition state law claims asserted against the bankruptcy trustee and his agents for conduct inextricably intertwined with the trustee's sale of property belonging to the bankruptcy estate involved a core proceeding").

14

Defendants argue that this action's outcome will have a "conceivable effect" on administration of the SF Foods' bankruptcy estate in that if Mr. Jackson succeeds on his claims, "significant liability could be imposed on the estate, which would affect the ultimate distribution to creditors." Defendants note that the complaint's claims, although asserting copyright violation, arise out of Trustee Sharp's administration and liquidation of SF Foods' estate as well as bankruptcy court approval of sale of SF Foods' assets to Olam. Defendants point to a "close nexus" between the complaint's claims and the SK Foods' bankruptcy to render the bankruptcy court "uniquely positioned" to determine issues raised by Mr. Jackson's complaint, especially considering the bankruptcy court's reservation of jurisdiction over disputes arising as to the purchase agreement, approval of the sale, and interests in property transferred to Olam.

Mr. Jackson raises no meaningful opposition to bankruptcy referral. The complaint's claims do not exist outside the bankruptcy in that Trustee Sharp arranged for the sale of SK Foods' assets and transfer of the Jackson software systems. At a minimum, the complaint's claims arise in the context of SK Foods' bankruptcy to warrant referral to the bankruptcy court. Defendants are correct that the bankruptcy court is better suited to address the complaint's claims. As such, this Court refers this action to the bankruptcy court with tolling of applicable limitations periods during the pendency of this action.

### **Trustee Sharp As An Indispensable Party**

In addition to grounds raised by Trustee Sharp and SK Foods, Olam seeks dismissal of claims against it in that Trustee Sharp[10] is an indispensable party so that claims against Olam cannot be resolved without Trustee Sharp's presence in this action.

F.R.Civ.P. 19(a) addresses compulsory joinder and requires a party's inclusion if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or

---

[10] Like Trustee Sharp and SK Foods, Olam characterizes Mr. Jackson's claims as directed against Trustee Sharp in his capacity as bankruptcy trustee.

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

F.R.Civ.P. 19 "sets forth considerations to guide a district court's determination whether a particular party should be joined in a suit if possible, referred to as a 'necessary party' . . . and, if so, whether, if the party cannot be joined, the suit should be dismissed because the absent party is 'indispensable.'" *Disabled Rights Action Committee v. Las Vegas Events, Inc.*, 375 F.3d 861, 878 (9th Cir. 2004).

"If an absentee is a necessary party under Rule 19(a)," a court determines "whether it is feasible to order that the absentee be joined." *Wilbur v. Locke*, 423 F.3d 1101, 1112 (9th Cir. 2005), *cert. denied*, 546 U.S. 1173, 126 S.Ct. 1338 (2006). "If joinder is not feasible, the court must determine . . . whether the case can proceed without the absentee, or whether the absentee is an 'indispensable party' such that the action must be dismissed." *Wilbur*, 423 F.3d at 1112; *Shermoen v. U.S.*, 982 F.2d 1312, 1317 (a court must determine whether the absent party is "indispensable" so that in "equity and good conscience" the suit should be dismissed).

"Under Rule 19(a)(1), a party is deemed 'necessary' if complete relief cannot be granted in its absence." *Disabled Rights*, 375 F.3d at 879. "This factor is concerned with consummate rather than partial or hollow relief as to those already parties, and with precluding multiple lawsuits on the same cause of action." *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir.), *cert. denied*, 464 U.S. 849, 104 S.Ct. 156 (1983). To conduct this analysis, "the court asks whether the absence of the party would preclude the district court from fashioning meaningful relief as between the parties." *Disabled Rights*, 375 F.3d at 879.

F.R.Civ.P. 19(a)'s "complete relief" clause addresses the interest in comprehensive resolution of a controversy and the desire to avoid multiple lawsuits regarding the same cause of action. *Northrop*, 705 F.2d at 1043; *Altmann v. Republic of Austria*, 142 F.Supp.2d 1187, 1211 (C.D. Cal. 2001). This provision concerns only "relief as between the persons already parties, not as between a party and the absent person whose joinder is sought." *Eldredge v. Carpenters 46 N. Cal. Counties Jt. Apprenticeship and Training Comm.*, 662 F.2d 534, 537 (9th Cir. 1981), *cert. denied*, 459 U.S. 917, 103 S.Ct. 231 (1982); *Altmann*, 142 F.Supp.2d at 1211.

Olam notes that the gist of the complaint's claims is that Olam did not obtain title to the Jackson software systems free and clear from Trustee Sharp and that Olam was required to assume a license agreement to use the Jackson software systems following its purchase sale of SK Foods' assets. Olam characterizes as "impossible" to hold Olam liable "without affecting the legality of the contract, which purported to transfer title to the software systems free of any encumbrances." Olam describes the complaint's claims as an "attack on the terms of a negotiated agreement," and a finding in Mr. Jackson's favor could create a claim by Olam against Trustee Sharp or SK Foods under the purchase agreement. Olam notes that claims against Olam implicate interests of Trustee Sharp and SK Foods and that their inclusion in this action is necessary to protect such interests.

Mr. Jackson points to the separate copyright infringement claims against Olam which Mr. Jackson contends are independent of claims jointly against SK Foods and Olam. Mr. Jackson notes Olam's motivation to raise a limitations defense if Olam is dismissed from this action to prejudice Mr. Jackson.

With referral of this entire action to the bankruptcy court, there is no indispensable party issue. Moreover, Olam fails meaningfully to apply the indispensable party factors. This Court views Olam's indispensable party points as smoke and mirrors with no genuine substance.

### **Joinder Not Feasible**

Olam argues that with Trustee Sharp's dismissal under the *Barton* doctrine, proceeding with claims against Olam will not be feasible without ability to join Trustee Sharp.

F.R.Civ.P. 19(b) addresses infeasibility of joinder:

> If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
>
> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
> (A) protective provisions in the judgment;
>
> (B) shaping the relief; or

1         (C) other measures;

2    (3) whether a judgment rendered in the person's absence would be adequate; and

3    (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

5    Olam argues that an adjudication in Trustee Sharp's absence would be prejudicial to defendants given that Trustee Sharp would be unavailable to defend his right to transfer the Jackson software systems and Olam could be held liable for wrongful conduct attributable to Trustee Sharp. Olam raises potential of its indemnity or contribution action against Trustee Sharp based on breach of contract or misrepresentation if Mr. Jackson succeeds on the complaint's claims. Olam concludes that an action by Mr. Jackson in the SF Foods' bankruptcy will provide an adequate remedy.

11    In the absence of dismissal of SK Foods or Trustee Sharp with referral to the bankruptcy court, there is no infeasibility joinder issue. Olam's concerns are soothed with SK Foods' and Trustee Sharp's remaining in this referred action. Olam fails to demonstrate that it is subject to dismissal due to joinder considerations.

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court DISMISSES without prejudice this action and REFERS this action to the bankruptcy court for this district. The clerk is directed to take necessary action to refer this action to the bankruptcy court for this district and to close this action.

IT IS SO ORDERED.

**Dated:   October 11, 2012**                     /s/ Lawrence J. O'Neill
                                                            UNITED STATES DISTRICT JUDGE